OPINION
On March 23, 1998, Charles and Leslie Zang filed a complaint in the Franklin County Court of Common Pleas against John and Marjorie Engle. The Zangs sought permanent injunctive relief and monetary damages for an alleged private nuisance. The Zangs, who lived next door to the Engles, alleged the Engles' dogs engaged in excessive and continuous barking which constituted a nuisance. The Engles filed an answer and a counterclaim.[1]
On April 8, 1999, the case was referred to a magistrate for trial. On November 4, 1999, the magistrate rendered a decision and on November 22, 1999, the magistrate filed an addendum to such decision which contained findings of fact and conclusions of law. The magistrate found that the barking was such that it clearly annoyed and disturbed the Zangs and made them quite uncomfortable in the free use, possession or enjoyment of their property. The magistrate concluded that the Zangs showed by clear and convincing evidence that a nuisance existed and had to be abated. Accordingly, the magistrate ordered, in part, that the Engles be permanently enjoined from allowing any of their dogs to bark in a manner that creates an unreasonable amount of noise such that it interferes with the peace, quiet and normal enjoyment of the Zangs' residence.
On November 18, 1999, the Engles filed objections to the magistrate's decision and a request that the trial court hear additional evidence. As to their request that the trial court hear additional evidence, the Engles asked the trial court to consider other neighbors' testimony on the issue of the dogs barking.
On January 19, 2000, the trial court rendered a decision overruling the Engles' objections to the magistrate's decision, denying the Engles' request to hear additional evidence and adopting the magistrate's decision. A judgment entry was journalized on February 16, 2000.
The Engles (hereinafter "appellants") have appealed to this court, assigning the following errors for our consideration:
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ERRED BY REFUSING TO CONSIDER ADDITIONAL EVIDENCE.
 ASSIGNMENT OF ERROR NO. 2
 THE COURT ERRED IN THAT IT BOTH COMPLETELY IGNORED AND UTTERLY DISTORTED THE UNREBUTTED TESTIMONY OF A DOG TRAINING EXPERT WHO TESTIFIED THE ENGLES' DOGS BARKING WAS NOT EXCESSIVE EXCEPT WHEN PROVOKED BY THE ZANGS.
 ASSIGNMENT OF ERROR NO. 3
 DESPITE THE ENGLES' MOTION SEEKING THE SAME, THE COURT ERRED IN ADOPTING THE MAGISTRATE'S DENIAL OF THE ENGLES' RIGHT TO PURSUE AN INDEPENDENT PSYCHOLOGICAL EVALUATION OF THE ZANGS.
 ASSIGNMENT OF ERROR NO. 4
 THE COURT GROSSLY ABUSED ITS DISCRETION BY ADOPTING THE MAGISTRATE'S DETERMINATION IN HIS CAPACITY AS TRIER OF FACT, THAT THE ENGLES' DOGS WERE THE ONES BARKING DURING THE NIGHT TIME WHERE THERE WAS ABSOLUTELY NO EVIDENCE TO SUPPORT SUCH A FINDING.
 ASSIGNMENT OF ERROR NO. 5
 THE COURT GROSSLY ABUSED ITS DISCRETION BY IGNORING THE TOTAL LACK OF ANY EVIDENCE INTRODUCED TO SUPPORT ALLEGATIONS THAT THE ZANGS "SUFFERED CONTINUOUSLY FROM THE NOISE [AND THAT SUCH SUFFERING WAS] REAL AND WELL DOCUMENTED."
 ASSIGNMENT OF ERROR NO. 6
 THE COURT ERRED IN THAT IT FAILED TO TAKE INTO ACCOUNT THE TYPE OF NEIGHBORHOOD IN WHICH THE PARTIES RESIDED.
 ASSIGNMENT OF ERROR NO. 7
 THE TRIAL COURT ERRED BY TOTALLY IGNORING OHIO CASE LAW, INCLUDING THAT OF THIS APPELLATE DISTRICT, REGARDING THE ISSUE OF WHETHER THE MAINTENANCE OF DOGS CONSTITUTES A PRIVATE NUISANCE.
 ASSIGNMENT OF ERROR NO. 8
 THE COURT ERRED BY FAILING TO CONSIDER THE ZANGS' LACK OF "CLEAN HANDS" WITH RESPECT TO THE ZANGS USE OF DIRT BIKES.
 ASSIGNMENT OF ERROR NO. 9
 THE COURT ERRED IN THAT IT FAILED TO CONSIDER THE COURT'S ABILITY TO ENFORCE ITS RULING.
In their first assignment of error, appellants contend the trial court erred in denying their request to hear additional evidence. After the trial and the magistrate's decision, appellants filed a motion requesting the trial court hear additional evidence. Specifically, appellants requested the trial court allow the neighbors of the parties to testify. Appellants attached to their motion signed statements of eight neighbors.[2] Such statements were exactly the same and indicated, in essence, that the neighbors thought the lawsuit was ridiculous, but they had not wanted to get involved. However, since a decision adverse to the Engles had come out, they were now willing to testify. The trial court denied appellants' motion, concluding appellants failed to demonstrate that they could not have previously provided the neighbors' testimony.
Civ.R. 53(E)(4)(b) states, in pertinent part:
 The court shall rule on any objections [to the magistrate's decision]. The court may * * * hear additional evidence * * *. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration.
There is no requirement that the trial court hear additional evidence upon objections. Ferguson v. Ferguson (Mar. 21, 2000), Franklin App. No. 99AP-518, unreported, at 7. In the case at bar, the trial court did not abuse its discretion in denying appellants' request to hear additional evidence as appellants did not demonstrate that they could not have produced the neighbors' testimony for consideration by the magistrate. The neighbors' signed statements simply do not serve as a sufficient demonstration. The neighbors may well not have wished to get involved initially; however, appellants could have compelled their neighbors' testimony. The fact that appellants "lost" the case does not serve as a sufficient reason to allow them to reopen the case and have a second chance to defend.
Having found no error in the trial court's decision denying appellants' motion to hear additional evidence, appellants' first assignment of error is overruled.
In their third assignment of error, appellants contend the trial court erred in adopting the magistrate's decision which denied appellants' request that the Zangs (hereinafter "appellees") submit to a psychological evaluation. Appellants originally requested psychiatric evaluations of appellees on May 29, 1998. The trial court granted this request on June 16, 1998. Apparently, Mr. Zang showed up for his scheduled appointment; however, the doctor requested Mr. Zang sign a release due to Mr. Zang's insistence that a witness be present. By the time the release was negotiated, the time for an evaluation that day had run out. Ms. Zang apparently never showed up for her scheduled evaluation. The record contains no indication that other evaluations were scheduled, and appellants never filed any motions to compel or for contempt.
On May 12, 1999, approximately one and one-half months prior to trial, appellants again moved for psychological evaluations of appellees, this time before a different professional. Appellees filed a memorandum contra, noting that discovery cut-off was January 11, 1999 and that appellants had failed to demonstrate appellees' mental conditions were in controversy. On July 23, 1999, the trial court denied appellants' motion.
Appellants contend psychological evaluations should have been ordered because nuisance cases require a showing that the alleged nuisance annoys a person of normal sensibilities. Civ.R. 35(A) states:
 When the mental * * * condition * * * of a party * * * is in controversy, the court in which the action is pending may order the party to submit himself [or herself] to a * * * mental examination * * * . The order may be made only on motion for good cause shown * * * .
Once the specific requirements under Civ.R. 35(A) are met, the determination whether to order a psychiatric evaluation is within the discretion of the court. Brossia v. Brossia (1989), 65 Ohio App.3d 211,215.
Appellants failed to demonstrate that appellees' mental conditions were in controversy. Simply because a nuisance action may involve a showing that the plaintiff is a person of normal sensibilities does not in and of itself serve as a basis for ordering a psychiatric or psychological evaluation. Many causes of action involve determinations of a person's reasonableness and/or state of mind. It does not follow that such person's mental condition, as contemplated by Civ.R. 35(A), is in controversy.
Appellants contend that appellees have alleged injury to their physical, emotional and mental conditions. First, the complaint does not so allege. In addition and as indicated above, such would not be sufficient to warrant psychological examinations. There must be a demonstration that appellees' mental conditions are in controversy. There simply has been no demonstration of any controversy in that respect.
Therefore, the trial court did not err in failing to order psychological evaluations. Accordingly, appellants' third assignment of error is overruled.
Appellants' second, fourth, fifth, sixth, seventh and eighth assignments of error involve, in essence, evidentiary issues and whether or not nuisance was shown. These assignments of error will be addressed together. As to factual issues, this court is guided by a presumption that the findings of the trier of fact were correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,79-80. Deference is given to the findings of the trial court as it is best able to observe the witnesses and to use such observations in weighing the credibility of the testimony. Id. at 80. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, syllabus.
Before reviewing the evidence, we must address the law of nuisance. In Taylor v. Cincinnati (1944), 143 Ohio St. 426, paragraph two of the syllabus, the Supreme Court of Ohio held:
 Absolute nuisance, for which strict liability or liability without fault is imposed by law, may be defined as a distinct civil wrong arising or resulting from the invasion of a legally protected interest, and consisting of an unreasonable interference with the use and enjoyment of the property of another; the doing of anything or the permitting of anything under one's control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights; the unlawfully doing of anything or the permitting of anything under one's control or direction to be done, which results in injury to another; or the collecting and keeping on one's premises anything inherently dangerous or likely to do mischief, if it escapes, which, escaping, injures another in the enjoyment of his legal rights.
Put in general terms, a private nuisance involves the invasion of the private interest in the use and enjoyment of land. Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 712. See, also, generally, Stewart v. Seedorff (May 27, 1999), Franklin App. No. 98AP-1049, unreported, discretionary appeals not allowed in (1999), 87 Ohio St.3d 1409.
The law of private nuisance is a law of degree, and it generally turns on the factual question of whether the use to which the property is put is a reasonable use under the circumstances and whether there is an appreciable, substantial, tangible injury resulting in actual material and physical discomfort. Rautsaw v. Clark (1985), 22 Ohio App.3d 20, 21. What amount of annoyance or inconvenience will constitute a legal injury resulting in actual damage, being a question of degree, is dependent on varying circumstances, cannot be precisely defined, and must be left to the good sense and sound discretion of the tribunal called upon to act. Id., quoting Columbus Gas Light Coke Co. v. Freeland (1861), 12 Ohio St. 392, 399.
To entitle an adjoining property owner to recover damages for a nuisance, it is not necessary that such owner be driven from his or her dwelling or that the defendant's acts create a positive unhealthy condition; it is enough that the owner's enjoyment of life and property is rendered uncomfortable.Brown at 715. In so determining, courts have stated that a trial court must look at what persons of ordinary tastes and sensibilities would regard as an inconvenience or interference materially affecting their physical comfort. See O'Neil v. Atwell
(1991), 73 Ohio App.3d 631, 636.
With the above legal principles in mind, we turn to the evidence to determine whether the trial court's judgment was supported by competent, credible evidence. We conclude that it was.
As indicated above, appellees lived next door to appellants. (Tr. 21-22.) Appellants had four dogs. Id. at 24. Mr. Zang testified that they moved into their house in July 1997, and he noticed the amount of time the dogs were out and the amount of continuous barking. Id. at 26. As time went on, appellees noticed it more. Id. at 27. Mr. Zang testified that he could hear the dogs barking from inside his house, both with the windows open and closed. Id. at 30. Mr. Zang described the barking in the two years prior to trial as "[e]xtreme, excessive loud barking." Id. at 31.
Mr. Zang went on to testify that the barking would typically last quite some time. Id. at 31. At times, it affected his ability to sleep. Id. The barking had interrupted meals and entertaining. Id. at 31-32. The barking has influenced Mr. Zang's ability to work out of his home office. Id. at 48. Mr. Zang moved his office from the back of his home to the front, yet he still at times heard the barking. Id. at 49. Mr. Zang stated that they tried to change the time they ate dinner or got up in the morning. Id. at 50. Mr. Zang testified that the noise had interrupted phone conversations and television watching. Id. When asked if the noise had any affect on him in terms of things he would ordinarily do around the house, Mr. Zang testified:
 Just visiting with friends. My wife and I tried to enjoy our property. We worked really hard for what we have, and it's taken a real toll on us. So, the answer to that, yes, it is extremely affecting our life. [Id. at 49.]
Ms. Zang testified that the barking affected things they ordinarily did in their home. Id. at 149. Ms. Zang stated that it affected her ability to concentrate, it caused her to become "more stressed out" when the dogs were out and barking excessively, and it affected her mood when she entertained guests.Id. at 150-151. She has not been able to relax, and the barking has interrupted her sleep. Id. at 151-152. When asked if the barking had affected her relationship with Mr. Zang, Ms. Zang stated:
 On occasion, yes. We find that there are times when we are trying to have a normal dinner conversation and the dogs come out barking and we become so frustrated and so upset because we can't do anything about that that we have to go and shut the windows, or we have felt on many occasions that we don't want to necessarily be at home and that we will just leave, just to get away. [Id. at 151.]
Ms. Zang testified that the situations she described had gone on regularly over the past couple of years. Id. at 152.
Appellees kept a log of the dog barking. Entries were made almost everyday from December 15, 1997 to March 13, 1999. Most days, the dogs were described as barking continuously for at least fifteen minutes up to over one hour. The remaining time the dogs were out, they barked periodically. Some of the barking occurred around 11 p.m. and 12 a.m. A lot of the barking was during the evening hours of 5 to 6 p.m. However, the logs as whole show that the dogs were outside and barking at various times.
Appellees also videotaped the dogs barking. Thirteen videotapes were admitted into evidence during the trial. Appellants' dog expert, William R. Oliver, viewed an hour long videotape and testified that he felt the dog barking was not excessive. (Oliver deposition at 60.) This court will not reverse the trial court's finding of a nuisance based solely on Mr. Oliver's opinion as to the video. Appellees' testimony and the logs they kept constitute sufficient competent, credible evidence supporting the nuisance finding.
We point out that the videotapes are not in the record on appeal. Hence, this court has not viewed the tapes. At oral argument before this court, the fact that the videotapes were not in the record was made known to the parties. From the bench, this court gave appellants' counsel until September 8, 2000 to locate the videotapes from the trial and supplement the record on appeal.
On September 8, 2000, appellants' counsel filed a "MOTION TO SUBSTITUTE EVIDENCE OR IN THE ALTERNATIVE, TO DECLARETHE NON-NECESSITY [OF] CONSIDERING THE MISSING EVIDENCE." In the memorandum in support of such motion, appellants' counsel indicated that his attempts to obtain the videotapes were unsuccessful. Appellants' counsel has requested that this court allow the substitution of "duplicate" evidence for the original evidence. However, appellants' counsel also states that it is not necessary to view such tapes, pointing out that the trial court only viewed a representative sampling of such videotapes.
We first point out that it is appellants' duty to ensure the complete record is transmitted to the appellate court. Appellants have failed to do so, even after given extra time in which to do so. Appellants now request this court allow them to substitute duplicate videotapes. This court declines to allow such substitution. While it is possible that the parties could agree and this court could accept that duplicates of the videotapes be substituted, such substitution would be untimely, as appellants' counsel has already been given time to supplement the record and has failed to do so. Further, we agree with appellants' counsel that it is not necessary to view the videotapes introduced at trial. There is ample evidence before this court in which to determine whether the trial court's judgment was against the manifest weight of the evidence.
For these reasons, appellants' motion to substitute "duplicate" videotapes is denied.
Lastly, we address appellants' other specific contentions regarding the evidence. Appellants contend Mr. Oliver's testimony was ignored. Mr. Oliver testified he viewed an hour long videotape in order to determine whether the dogs had been provoked. (Oliver deposition at 17.) Mr. Oliver concluded that the dogs had been provoked. Id. at 19. He stated that he recalled the dogs were generally looking in the same direction and were barking at the same thing. Id. at 33. He also noted the dogs' posture, the way they held their tails and the "tonality" of their barking. Id. at 18. Mr. Oliver testified that the barking could be the result of a person just standing whom the dogs did not like. Id. at 35-37. In fact, Mr. Oliver testified that he believed every time a dog was barking on the videotape, it had seen a person it did not like. Id. at 37.
However, Mr. Oliver also testified that he never actually saw a person in the video. Id. at 35. Mr. Oliver never met the dogs or their owners. Id. at 51. Mr. Oliver testified that for training and behavior modification purposes, there are advantages to having actually met a dog. Id. at 52-53. In order to evaluate behavior, a lot of information is necessary and as one spends more time with a dog, one learns how the dog reacts to different things. Id. at 53, 57. Finally, Mr. Oliver testified that it would have been beneficial in forming his opinions in this case to have met the dogs, examined their environment and talked to the owners. Id. at 58.
Both appellees testified that they did not provoke the dogs while videotaping them. (Tr. 45, 149.) During the majority of the taping, appellees were in an upstairs bedroom. Id. at 45. In addition, the logs, as generally described above, contain the most extensive record of the dog barking — almost daily, and there is no evidence that appellees provoked the dogs and/or were within the dogs' sight at these times.
Given all of the above, the trier of fact could reasonably conclude that the dogs were not provoked into barking by appellees.
As to the issue of other dogs barking, there was evidence that other dogs in the neighborhood barked. However, such evidence was minimal. Ms. Zang testified that if a dog barks and she does not see it, she cannot be sure that it is appellants' dog. Id. at 157. However, she testified that she believed the dogs she heard barking were appellants' dogs. Id. at 157, 160-161. More importantly, the logs recorded the barking of appellants' dogs. As indicated above, the logs indicated that a lot of the barking occurred during the evening hours of 5 to 6 p.m. Only occasionally did the logs record barking at night. Further, appellees' testimony regarding the excessive dog barking was in the context of appellants' dogs, not other dogs in the neighborhood. Even if one concluded that other dogs in the neighborhood barked, this does not take away from the overwhelming evidence supporting a finding that appellants' dogs barked almost daily and disturbed appellees.
Appellants contend that the type of neighborhood the parties lived in (allegedly a "rural" neighborhood) should have been considered. However, there was no evidence regarding the neighborhood that could possibly affect a determination of whether or not a nuisance existed. Hence, appellants' contention in this regard is not well-taken.
Appellants contend the trial court erred in failing to consider appellees' lack of "clean hands." There was evidence Mr. Zang rode a motorized dirt bike on his property and that such was louder than the dogs. Id. at 61-62, 169. However, the only evidence is that Mr. Zang rode the dirt bike once or twice per month. Id. at 169. There is no evidence of any complaints regarding such riding. More importantly, even if such was relevant to the issue of nuisance, the evidence as to the dirt bike is so minimal that it would have no effect on the outcome in this case.
Given all of the above, we find there was sufficient competent, credible evidence to support a finding of a private nuisance. Therefore, the trial court's judgment was not against the manifest weight of the evidence. Accordingly, appellants' second, fourth, fifth, sixth, seventh and eighth assignments of error are overruled.
In their ninth and final assignment of error, appellants contend the trial court failed to consider the inability to enforce its own ruling. Appellants assert, in essence, that it would not be practical to enforce the injunction against them as there are no objective standards by which to measure compliance. The permanent injunction consisted of the following, in part:
 [Appellants are] permanently enjoined and restrained from permitting any of the dogs they own or harbor, to bark in the manner described in the following paragraph, while said dogs are outside their residence * * * .
 * * * [A]ll parties understand that an infrequent bark is not what this permanent injunction is enjoining; rather, the intent of this Permanent Injunction is to restrain and enjoin [Appellants'] dogs from creating an unreasonable amount of noise so as to interfere with the peace, quiet and normal enjoyment to which [Appellees] are entitled in the use of their residence * * * . The amount of barking as shown in the tapes is sufficient evidence of what unreasonable amounts of barking consist of. * * *
* * *
 * * * [Appellants] are to obtain an anti-barking device * * * for the dogs. * * * (Magistrate's decision at 13-14.)
The above order, as adopted by the trial court, is enforceable and, more importantly, constitutes a proper injunction. The law of nuisance, as indicated above, is a law of degree and reasonableness. It does not follow then that an injunction cannot issue which addresses the exact nuisance found to exist. Here, the nuisance is dog barking. While the amount of barking that may be found excessive cannot be measured exactly, there is sufficient evidence in the record as to dog barking that can be looked to if enforcement of the injunction is necessary. Further and contrary to appellants' contentions, the order does contain objective standards with which to comply. Appellants must obtain anti-barking devices, and the videotapes serve as a measure of what constitutes excessive barking.
The trial court's injunction is proper. Therefore, appellants' ninth assignment of error is overruled.
In summary, all of appellants' assignments of error are overruled.
Having overruled appellants' assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
KENNEDY and BRYANT, JJ., concur.
[1] The counterclaim was subsequently voluntarily dismissed.
[2] We note that such statements were not in affidavit form.